MORRIS KRAUS, an Infant, by JOE KRAUS, His Guardian ad Litem, Respondent, *v.* QUEENS COUNTY WATER COMPANY, Appellant, Impleaded with WILLIAM BERNSTEIN and Others, Defendants.

First Department, July 3, 1919.

Nuisance — barrel sunk in ground on private property to hold water meter — liability of water company for injury to child falling into barrel.

The plaintiff, an infant about five years old, while passing between the house in which he resided and the next adjoining house, stepped on the cover of a barrel sunk in the ground near the adjoining house, and the cover breaking he fell and received injuries. The barrel in question was placed in the ground to protect a water meter, and was so placed, originally, by the water company, but prior to the accident the meter had been removed and later another meter installed by the tenants of that house. The water company had no interest in the property other than the ownership of the meter, which was examined and read from time to time by its employee, and there was no public right of travel over the premises and no invitation to the plaintiff to enter thereon.

*Held,* that no liability attached to the water company as it neither had charge nor control of the premises, and the barrel was sunk in the ground for the use and convenience of the owner and not as a trap or pitfall for any one who might pass through between the buildings.

The water company was not chargeable with knowledge that the space between the houses would be used as a passageway and it was under no obligation to furnish a cover of sufficient strength to sustain the weight of persons walking upon it.

APPEAL by the defendant, Queens County Water Company, from a judgment of the Supreme Court in favor of the

plaintiff, entered in the office of the clerk of the county of New York on the 18th. day of December, 1918, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Thaddeus G. Cowell* of counsel [*Lord, Day & Lord,* attorneys], for the appellant.

*Nathaniel Tonkin,* for the respondent.

Laughlin, J.:

The case, as presented by the plaintiff, tends to show that on the 25th day of June, 1912, the plaintiff, who was then about five years and seven months of age and who resided with his parents temporarily at No. 33 South Hammels avenue, Rockaway Beach, N. Y., while passing from the rear of the premises, between the house in which he resided and the next adjoining house, known as No. 31 South Hammels avenue, toward the street, stepped on the wooden cover of a barrel sunk in the earth near the building on No. 31, and projecting from one to two and one-half inches above the surface of the ground, and the cover split or broke and he fell, his left hip striking the top of the barrel and his left leg entering it, and that he thereby sustained injuries to recover for which this action was brought.

One Lasky owned the premises No. 31 and the barrel was wholly on his premises.    The division line between his property and No. 33 was practically midway between the houses, which were four feet, ten inches apart at the nearest point, and a little further where the barrel was.    It was a small barrel and was at the edge of Lasky's house.    The plaintiff sued Lasky to recover for his injuries, and in his complaint charged that Lasky maintained an open hole adjacent to the wall of his building *without any covering thereon* and that the plaintiff was attracted thereto, and while playing, and by reason of the hole being open, fell into it sustaining injuries, and also charged Lasky with negligence for maintaining a nuisance in that the hole was not properly covered and was maintained in violation of law.    The court in that action before trial authorized a settlement and a discontinuance thereof and the

execution of a release releasing Lasky only on the payment of $250 on affidavits tending to show that the appellant herein placed and maintained the barrel for the purpose of maintaining a meter therein to measure the water consumed on the premises. This action was then brought against the appellant and the tenants of Lasky but was discontinued as to the tenants and prosecuted only against the appellant which was engaged in furnishing water to the inhabitants of Rockaway Beach. The original complaint was for leaving the barrel *wholly uncovered*, but on the trial the evidence showed that it was covered and that there was a stone on the cover. The plaintiff was then allowed to serve an amended complaint to conform to the proof and a short adjournment was taken. The plaintiff in the amended complaint alleged that the defendants, other than the appellant, were in occupancy and had charge of the house and premises including the alleyway or space of ground between the houses in which the barrel was placed; that the appellant dug a hole in the alleyway and placed a barrel therein and inserted therein a meter which was connected with the service pipes; that the defendants had charge and control of the barrel and of the hole in which it was inserted and that it was their duty to keep it covered, but in disregard thereof they permitted the barrel, hole or opening to remain open, thereby causing a dangerous and threatening nuisance, and thereby causing the alleyway to become dangerous to persons passing along the same and to children playing therein, and in disregard of their duty negligently and wrongfully maintained and permitted the barrel, hole or opening to become covered by a wooden cover which was thin, flimsy, broken, unsubstantial and otherwise unsafe and unfit as a cover therefor and that in consequence thereof the plaintiff, while passing along the alleyway or pathway, fell into the hole or opening and sustained injuries, the particulars of which are alleged. The case was submitted to the jury to determine whether the appellant was responsible for the construction and maintenance of the hole and barrel, with instructions that, if so, it was liable on the ground that it maintained a nuisance. No question of negligence on the part of the appellant was submitted to the jury. The court charged as a matter of law that the hole and barrel con-

stituted a nuisance and that the appellant was liable if it constructed and maintained it, provided that the accident occurred as claimed by the plaintiff. The court also charged, without any objection or exception by the respondent, that there was no evidence that the defendant either willfully or wantonly exposed the plaintiff to injury and that neither the hole nor the barrel was a trap for children. The plaintiff acquiesced in the submission of the case to the jury on the theory that the appellant's liability depended upon whether it created and maintained the nuisance and did not ask to have it submitted on the theory of negligence. The appellant had no interest in the property other than the ownership of the meter which was placed in the barrel and which was examined and read from time to time by its employee for the purpose of preparing the bills for the use of the water furnished by it to the premises. There was no public right of travel over the premises, and so far as appears neither the plaintiff nor any one else was invited by the owner or the appellant to travel over or to otherwise use the premises of Lasky in which the hole had been dug and the barrel had been placed in an upright position with the upper end projecting above the surface of the ground as already stated. It appears that there was a fence on the line of the street with a gate therein opposite the opening between the two houses, but there was no walk through this space and no door from either building opening thereon. It is, however, to be inferred that access to either house could be had from the yard in the rear thereof by passing through the opening between the buildings, and the evidence shows that at times some of the occupants of one of the houses passed to and from the rear of the building through between the buildings on going to and returning from the bathing beach. A photograph was offered in evidence by the defendant on the cross-examination of the plaintiff showing the opening between the buildings and a cover on the barrel next to the wall of Lasky's house with a stone thereon and the plaintiff testified that the appearance of the cover and the stone was the same at the time of the accident as was shown by the photograph, but that it was a different cover. This photograph in connection with the evidence shows that the top of the barrel projected

from a foot to a foot and one-half from the wall of Lasky's building into the space between the two houses. The evidence shows that prior to the 20th day of May, 1911, water was furnished to these premises without a meter; that on that day, on an application in writing by Lasky, the appellant installed a meter. The testimony of one Verdon, an employee of the appellant who had charge of the setting of the meters, and of his helper Anderson, shows that they installed the first meter; that the service pipe ran between the buildings, and that they excavated to and cut the pipe running into the Lasky building and connected the meter; that they asked Lasky, in substance, to provide a pit for the meter and that Lasky asked if a temporary one would do, to which they assented, and that Lasky handed to Verdon a small, stout barrel — Lasky testified that it was a herring barrel — which they placed over the meter and which extended partly under the house; that the diameter of the barrel was less than twelve inches; that they made a cover about fourteen inches square and fitted it to the barrel with cleats, and that it was capable of sustaining the weight of two men; that they then filled in the hole around the barrel, and that the cover extended partly underneath the house, and that the top of the cover was about two inches above the surface of the ground.

The uncontradicted evidence shows that the appellant had nothing to do with placing the service pipes and that they were placed by the owners of the premises to which water was supplied by plumbers employed by them. On the 18th of May, 1912, this meter was removed by the appellant, evidently on account of a change in tenants, for formal application in writing was made to the appellant between that day and the 22d day of May, 1912, by other tenants, to supply the premises with water for one year and from year to year until further notice in writing. The application provided that the meter was *to be loaned* and to be kept in repair by the company, and that the meter should be located at a place to be selected by the company where it might be conveniently read and inspected, and the lessees of the meter agreed to bear all expenses of repairs thereto occasioned by fire, frost or accident, or act of any person on the premises, and agreed to keep the

service pipes in repair unless the same should be purchased by the company as therein provided. The evidence on the part of the defendant shows that the meter for which this application was made was delivered to Lasky, the owner, on the twenty-second day of May, and that the appellant did not install it. Lasky, however, denied that he received or installed the meter. The fair inference from the evidence is that Lasky's tenants installed it the last time. After the meter was installed an employee of the appellant read it on the twenty-eighth day of May, and in so doing he was necessarily obliged to remove the cover. The complaint, however, as presented by the evidence adduced in behalf of the plaintiff, is not that the cover was not properly placed or replaced on the barrel, but that it was made of very thin boards, and unsuitable and insufficient. The evidence on the part of the plaintiff tends to show that the thin cover that was on the barrel at the time of the accident was the same cover that has been there since the 1st of May, 1912. The testimony of Lasky, who was called by the plaintiff, and his wife, who was called by the appellant, is to the effect that the cover first placed on the barrel was a tin or galvanized cover, and Mrs. Lasky says that she, being desirous of using the tin or galvanized cover, took it off and put in its place the cover of a washtub which was heavy and strong.

We are of the opinion that upon no theory can the recovery be sustained. The appellant had neither charge nor control of the premises, and the barrel was inserted therein for the use and the convenience of the owner, and not as a trap or pitfall for any one who might pass through between the buildings. Whether the cover was thin and weak, as claimed by the plaintiff, or thick and strong, as claimed by the appellant, it was in plain sight and weighted down by a stone and it was open and obvious to any one that it was a cover to something and not a place to walk. There was ample room to walk through between the houses without stepping upon or coming in contact with the cover. The accident happened in broad daylight. While the plaintiff, owing to his youth, is not chargeable with the same degree of care as an adult, he admitted that he knew there was a barrel there containing a water meter and that the cover was there to protect the meter. It is

utterly improbable that the cover was so fragile that it would not sustain the weight of this little boy. It is more probable, as he originally claimed, that the cover was not on the barrel or as other evidence indicated that he was pushed against it. The appellant was not chargeable with knowledge that the space between the houses would be used as a passageway, and it was under no obligation to furnish a cover to the barrel to sustain the weight of people stepping or walking upon it. The appellant was neither in charge nor in control of the premises. It merely owned the meter which it had lawfully loaned to the occupants of the premises. If the owner of the premises or his tenants in possession and control thereof had knowledge that people were lawfully using the space between the two houses as a passageway, they may have been under obligation either to forbid such use, or to see that the barrel had a suitable cover in view of such use. But the evidence in this record is insufficient to hold the appellant, either upon the theory of nuisance or of negligence, and as already observed, the plaintiff did not ask to have the case submitted to the jury on any theory of negligence.

It follows that the judgment and order should be reversed, with costs to the appellant, and the complaint dismissed on the appellant's motion at the close of the evidence, with costs.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.